### NEW YORK GENERAL SESSIONS.

THE PEOPLE OF THE STATE OF NEW YORK agt. GEORGE KRUSHAW and six other persons, indicted for violations of law of April 14, 1866, commonly known as the "Excise Law."

DEMURRER to indictments.

A. 'OAKEY HALL, *District Attorney*,
CHARLES TRACY and GEORGE BLISS, JR., *for People*.
JAMES T. BRADY, *for prisoners*.

HACKETT, Recorder. *The People, &c.* agt. *George Krushaw and six others indicted under various provisions of the excise act of* 1866 : In these various cases demurrers have been interposed, upon the ground that the conceded facts constitute no cause for criminal action, and that the law under which the indictments were framed and found is unconstitutional. The indictments charge four generic offenses, which are distributed as follows : A count for selling liquors without holding the excise license of 1866 ; another count for giving away liquor ; again for keeping and disposing of the same publicly ; for similar acts especially committed upon a Sunday ; for neglect to keep liquor shops " completely and effectually closed " on Sunday ; and still another count for such neglect between midnight and sunrise of each intervening day and night. In these various indictments it is charged that the acts complained of were each and all committed unlawfully and maliciously ; the ordinary statutory words do not appear, such as giving away liquors with intent to evade sale ; publicly keeping liquors with intent to sell the same, or disposing of the same with intent to evade the law. In an act so novel in its features, the attorney for the people has, perhaps properly, in pleading, followed the language of the act in question, charging the offenses created by it. The excise law under consideration makes each and every act charged and counted upon a misdemeanor, and upon conviction the offender to be punished by imprisonment in the penitentiary. It further punishes by pecuniary penalties, and instigates dilligence to the suppression of violators of the law, by an award of premiums to the informers of such violations. It becomes a misdemeanor to, *first,* sell liquor ; *second,* to give it away ; *third,* to publicly keep it ; *fourth,* to dispose of it, without the seller, giver away, keeper or disposer, holding the especial license of the act of

In the matter of James De Vaucene.

connected in substance. The only question raised by the return is, whether the sale by De Vaucene of ardent and spirituous liquors mentioned therein without a license granted by the commissioners of the metropolitan board of health, subjected him to arrest and imprisonment upon the complaint made on oath against him. Such sale is in express terms prohibited by the act, and is declared to be an offense punishable by fine or imprisonment, or both. The act constitutes this a distinct and separate offense, having no connection with any other, and if the views above expressed are correct, it follows that De Vaucene was properly held in custody under such complaint, and that he was not impro-

1866. In addition, offenders are liable to have their "places" entered by sheriffs and police officers without process of any kind, simply upon their own action, their own discretion, and to summarily close and keep closed all such places for an indefinite term. In overruling the demurrers now interposed, one duty would alone remain to the court, which would be to sentence the defendants, under the law, for a misdemeanor, and to the penitentiary. In misdemeanors there is no *respondeat ouster* after demurrer (*People* agt. *Taylor*, 3 *Denio, p.* 9). On the other hand, if the demurrers are sustained for either of the various causes assigned by the counsel for the defendants, the decision of this court should be respected by the various magistrates and peace officers until reversed by a higher and appellate court. The question submitted is one of great importance both to the defendants, whose liberty is directly imperiled, and to the people, whose representatives framed the act. The indictments are founded upon alleged violations of the late excise act, and they must stand or fall upon the judicial decision to be rendered upon its legality or unconstitutionality. It was not indictable at common law to keep an inn or alehouse, unless disorderly conduct was commonly permitted therein (*Overseers* agt. *Warner*, 3 *Hill*, 150). Statutes for regulating the sale of intoxicating liquors have existed since the reign of Edward II., and commenting upon them, Bishop, in his treaties, takes occasion to write: "Whoever takes the trouble to read the old statutes of England on this subject learns, from rescitations of facts therein made, that the enforcement of this class of laws was always difficult." I have been unable to find in my researches that in Great Britain statutes regulating the liquor traffic, have ever contained any of the express or implied prohibitions against sales or the giving away of liquor, which have been incorporated in some of the states of the union, and even in Great Britain (where the church in harmony with the sovereign power might seem disposed to blend remedial laws with ethical notions), I am yet to learn, has gone to the extent of classifying the giving away of liquor as a crime. The act in question is so new and peculiar in its main feautures, that in giving my opinion upon the points involved and the conclusions to which I have arrived, I deem it necessary to quote some of its enactments. And, first, I would note a decided and remarkable innovation upon the license economy which has hitherto marked the legislative action of our state, which has authorized local authorities to select and appoint their own excise board. The new act makes an excise district created out of a metropolitan police district, but within the latter, and omitting therefrom Westchester county. By

perly detained and restrained of his liberty, and conse-
quently that he is not entitled to a discharge. He must,
therefore, be remanded, and all further proceedings in the
court be discontinued.

*In re John H. Ketchum*—GILBERT, J.   The return to the
writ of *habeas corpus* shows that the petitioner is held under
a warrant of arrest issued by the justice upon the sworn
complaint of a policeman, that on the 7th of July instant, in
the city of Brooklyn, in the county of Kings, the petitioner
did unlawfully and publicly keep, sell and dispose of a quan-
tity of strong and spirituous liquors—to wit : a glass of gin,
at his place of business, No. 12 Fulton street, contrary to the

the terms of section 1, the sellers and givers away of liquor in the counties of
Richmond and Queens, are supervised in their character and business by excise
commissioners, who are not only appointed by centralized power at the seat of
government, but one or more of whom are not even residents of one of the coun-
ties in which he or they exercise authority. The license fee of the dealers in
liquor within the excise counties are not made applicable to the benefit of the
fund belonging to those counties, but materially subserve to lighten the burdens
of taxation of the neighboring counties of Kings and New York (§ 23). In the
excise district the commissioners are charged with certain duties (§ 1). In the
metropolitan police district an inspector of excise has jurisdiction (§ 2). As the
boundaries of the several districts differ, it follows from the letter of these two
sections that the subordinate inspector has powers of jurisdiction which his supe-
riors have not been invested with.   His duties are such as may, from time to time
be delegated to him by the commissioners. The title of the act relates to the dis-
trict in which the inspector acts. The bulk of the sections affect the lesser or
smaller district.   By the terms of the act, certain omissions and commissions are
offenses at low water mark on the Westchester shore of the Harlem river, and
cease to be criminal at high water mark. The act divides persons who sell or
give away liquor into two classes ; the one who sells or gives away to
the extent of five gallons or in excess ; the other in quantities less than
five gallons (§ 7). The first class are not permitted to sell or give away
unless "licensed" and "permitted" (§ 3). Both classes are prohibited from
selling on credit (§ 17).   The lawful sales are now fettered by this provision just
as unlicensed (and therefore unlawful) sales of liquor have hitherto been.   In
acting upon applications for license the excise commissioners have delegated to
them the legislative power of fixing a license fee, to range between thirty and two
hundred and fifty dollars.   The counsel for the people upon the argument stated
that the board of excise had made two distinct licenses and two distinct amounts.
The license is only to be given to those alone who may be approved by the board
for good moral character. The act does not furnish any mode by which the con-
science of the board may be satisfied that evidence as to the requisites of charac-
ter are sufficient, although in former excise acts, certificates of character from resi-
dents and others within the ward or assembly district, have been regarded as suffi-
cient.   Upon the argument nothing was said as to the mode by which the board
practically acquainted itself with the subject of character ; but it is only fair to

In the matter of Ketchum.

provisions of the third and eighth sections of the act to regulate the sale of intoxicating liquors, &c., passed April 14, 1866. The discharge of the petitioner is demanded on the ground that the statute in question is unconstitutional and void.

1. It is said that the statute does not conform to section 16 of article 3 of the constitution, which requires the subject of a local bill to be expressed in the title. I think this objection has no basis in fact (*People* agt. *Liederman,* 36 *Barb.* 177). Besides, the article is not a local one within the meaning of the constitution.

2. The counsel for the petitioner admitted, as all must

---

presume that it would seek for legal testimony upon that subject rather than resort to the testimony of officers whose duty was simply to enforce the act. This license, when obtained, is to be hung up in the room or place where sales are made. It authorizes the holder to sell and dispose of—not sell or dispose of—the beverages named in the act and in the license only at such room or place. Both persons and premises are the subjects to be licensed. The license is also to be exhibited at all times to peace officers who demand its production. Not to do so, by the terms of the act, is to furnish evidence adverse to the legal status of such persons so declining or refusing. There is no mode provided for licensing the giving away or publicly keeping similar beverages, although to do so is made as much a misdemeanor when not licensed as to sell or dispose of when unlicensed (§ 31). Those licensed under this act are to prevent breaches of the peace in their places, and when their quietude is invaded are commanded, under penalty of being adjudged guilty of a misdemeanor, to forthwith remove all persons, the orderly as well as the disorderly—perhaps their assistants and themselves—from within doors, and close their places and keep them closed (§ 10). Licensed persons (except substantially those who keep hotels) are enjoined to keep their licensed places "completely and effectually closed on Sundays, and between midnight and sunrise in every twenty-four hours (§ 14). The license thus granted may be revoked, cancelled and annulled by the board "if it shall become satisfied that the licensed persons have violated any of the provisions of this act" (§ 22). The whole act bears marks of hasty consideration. There are many serious considerations which have arisen upon the arguments which demand attention without entering into the decision. Counsel for the people urged that conflicts between the constitution and the statutes ought not to be lightly countenanced. Surely this should be so where a forced construction of the constitution is urged against the natural equity and letter of the statute. The counsel for the accused, however, claim that the very letter of the bill of rights of the federal constitution is opposed by this excise act. The learned district attorney urged that "courts at *nisi prius* are in practice both to hear or treat constitutional questions, forcing the litigant to moot them in *banco* and the higher tribunals." But the reason assigned fails here, because the people enjoy, by these demurrers, as full benefits upon findings of fact as if convictions had been had before petit juries. The questions are not upon motions to quash, from which no appeal lies. The interposition of demurrers are now rarely used, and would seem to show, on the present occasion, the confidence of the

admit, that the prohibition against selling strong or spirit-
uous liquors, in quantities less than five gallons at a time,
without a license, is valid, but he contended that the whole
statute rested on section three, which contains this prohibi-
tion, and that because that section contains other and dis-
tinct prohibitions, which the legislature had not the power to
impose, the whole statute is void. I cannot assent to this
proposition. It is unsound in logic as well as in law. The
third section of the act in question provides that no person
shall publicly keep or sell, give away or dispose of, any
strong or spirituous liquors, &c., without a license, and
makes every violation of it a misdemeanor. The petitioner

counsel for the defense in the position he has assumed. It was urged that there
was a variance between the title and the body of the act, but I do not consider
that technical question, as my decision is placed upon the broadest grounds of
substance. It was argued that the act was a local one, and that many subject
matters embraced therein went beyond the expressive title, " to regulate sale."
The " query" of the court of appeals in the case of *The People* agt. *Williams* (24
*N. Y. R. p.* 405), certainly goes far towards qualifying what the court had previ-
ously said in *The People* agt. *McCann* (16 *N. Y. R.* 58). But with the conclusions
hereafter undoubtingly arrived at, a conclusion upon the above point may be
waived under the conflict of decisions. Connected with this point of locality
another and vital question arises : How far can the legislature constitutionally
oblige a county of the state to contribute to the revenues of another without the
state at large, or the county so taxed, enjoying a correspondent concurrent bene-
fit ? The residents, certainly, of the county towns of Kings and Queens, and per-
haps of Richmond county, by this act are forced to contribute not to the revenues
of the state, nor of their own respective counties. One of the most vital ques-
tions which has arisen upon the argument is, how far can the legislature
create crimes not general throughout the state, but geographical crimes ; crimes
defined and limited within certain districts, and only affecting certain counties
within the state, and of a higher grade than mere police infractions? Can it
make an act a crime in one county, city or town, and not in another county, city
or town, adjacent, upon grounds not peculiar to the particular customs, usages or
chartered restrictions of such locality? If such be its constitutional power,
where is the limit to legislative caprice? Can it make the stealing of $26 grand
larceny in Kings county, $30 grand larceny in Erie county, and 6d. grand larceny
in Oneida county? Can it apportion manslaughter by degrees throughout the
different counties in the state? In the case of *The People* agt. *Williams*, above
referred to, the point was raised and argued upon a local statnte making the
picking of pockets in New York a different crime from its legal definition in all
other parts of the state. The decision was given upon other points in favor of
the counsel for the accused ; but it may be remarked that at the succeeding ses-
sion of the legislature it destroyed the topographical character of the crime
adverted to, and made its legal definition and penalty general throughout the
state. No lawyer should doubt the inexpediency of the legislature enacting laws
of a criminal nature which should not in their operation be concurrent through-

is charged with selling a glass of gin without a license. The power of the legislature to create this offense, and to punish it in the mode prescribed, is unquestionable. It was indeed said, on the argument, that the right of disposition of liquor on hand at the time of the passage of the act was absolute, and that the legislature had no power to impair this right by requiring a license to be taken out as a condition of selling it in quantities less than five gallons. But this proposition was not proved, and it needs no argument to prove that it has no foundation in law. It being understood then, that the act with which the petitioner is charged is a legal offense and punishable as such; the precise question presented is

out the state. Is not the very essence of a criminal law its general application? Can the principle of territorially apportioning crime be sanctioned without ultimately allowing a legislature to enact criminal laws, applicable to some obnoxious person or persons, sect or sects? The authorities bearing upon this point are *Dwarris on Statutes* (*p.* 480); *Hatch* agt. *Vermont P. R. Co.* (2 *Vermont*, 48–61); *Benson* agt. *Mayor* (10 *Barb.* 245); *People* agt. *Draper* (15 *N. Y.* 544); *Calden* agt. *Ball* (3 *Dallas*, 386). It was argued that the act was unconstitutional, because excise commissioners are and always have been county or local officers, and that this act does not provide for the election or selection, but names them. It would seem that this point is not favored by the court of appeals in the fire department case. The counsel for the people, both the district attorney and the counsel for the excise commissioners, admitted upon the argumen that unless this act was regulatory, and was in any of its provisions prohibitory or confiscatory of property, or necessarily subjected the accused to deprivation of his liberty or property without due process of law, then it would be within the decision of the case of *The People* agt. *Wynehamer*, which decided the liquor law of 1855 to be unconstitutional. Let us then test this case by this concession and inquire: *First.* Is the act in question as presented to this court prohibitory? *Second.* Is it confiscatory? *Third.* Is it, when enforcing remedies, in conflict with the bill of rights? It will be conceded that implied prohibition, implied confiscation and implied conflict may become as effectual as express prohibition, express confiscation and express conflict. Such express conflict has been adjudicated upon in *Consa* agt. *Albro* (1 *Gray Mass. R. p.* 9), and *Toynbee* and *Wynehamer* cases. The act in question being highly penal in its character, involving upon conviction penal servitude, must be strictly construed. In the latest points submitted to me by the counsel for the excise board, it is said that penal statutes are not to be so construed as to defeat the manifest intention of the legislature; but that intent should be constitutionally conceived and expressed. One of the defendants stands indicted for giving away liquor without being licensed. Section 3, in connection with sections 16 and 19, undoubtedly make this act a misdemeanor, punishable by fine, imprisonment, penalty and arbitrarily closing up of any place within which such act should occur. It is somewhat remarkable that the statute omits to provide a license for giving away liquor; and the same may be said of the prohibition against keeping it publicly. The words " sale " and " disposing of," are convertible terms; but the phrases " giving away " and " publicly keeping," are not con-

whether the circumstances that the legislature incorporated in the same act other and distinct provisions which they had no power to enact, vitiate the whole statute. No authority for this proposition was cited except the case of *Wynehamer*, in 13 *N. Y. R.* On looking at that case I find that, so far as it contains any allusion to this subject, it is an authority for the reverse proposition. The rule contended for would be repugnant to reason and common sense, and I am satisfied no such rule has been or ought to be established. Mr. Sedgwick, in his treaties on statutory and constitutional law, says : " The principle that a statute is void only so far as its provisions are repugnant to the constitution, that all provi-

vertible or synonymous with "sale and disposition." Section 4 takes the seller out of the operation of the misdemeanor clauses by offering him the opportunity of a permit. No portion of the law exempts him who publicly keeps liquors or desires to give them away, from the operation of the misdemeanor clauses, of their stringent remedies and of their punishments. The law makes it a misdemeanor to give away or publicly keep liquor without a license. What is this but practical prohibition ? It is true that save in the county of Westchester and in all other parts of the subdivided police district, any person not licensed may keep, sell and dispose of five gallons at a time of strong and spirituous liquors, wines, ale and beer ; but what is the operation of this law upon any person who may have had in his possession at the time that the law went into effect, a lesser amount of the beverages mentioned ? Does not the provisions of the law referred to practically destroy or confiscate such property? The law makes it a misdemeanor to give away or publicly keep liquor, &c., without a license, and omits to provide one. Thus the law does not in terms forfeit or expressly destroy the wine or beer of the citizen as the law of 1855 aimed to do, nor seize them by undue process of law, but by making it penal to simply keep them and give them away, this act as effectually in the end destroys its value and character of property and takes it away from its owner without compensation. If this excise act be valid, every person who gives his guest a glass of wine commits a misdemeanor, and so does every apothecary who keeps a jar of alcohol. The excise acts of other states are not obnoxious to this criticism, for they severally in their several excise acts have added words of intent, such as—with intent to sell, or with intent, under the guise of a gift, to effect a sale, as in the striped pig illustration cited by the counsel for the excise board. Even the odious law of 1855 expressly excepted a dwelling house as the scene of gift or keeping, which the act in question does not. Others are indicted for not " effectually and completely closing " their places. Where is the constitutional power to make such an enactment ? A man's house has always been regarded as his " castle." So long as he does not commit crime in it or disorder, may he not keep it open as long as he pleases and at all hours ? Concede that the legislature may regulate the hours of sale, yet wherein consists the crime of keeping one's premises open to public view, or private ingress or egress ? Many storekeepers in every walk of life, live in rooms adjoining their shops. Some have no entrances to the abodes of their families except through their shops or stores, where poverty or the desire of thrift compels or induces

In the matter of Ketchum.

sions may thus be void, and this not affect other provisions of the statute, has been frequently declared" (*Sedgwick, Const. Law,* 489). "The principle is now well understood," says the supreme court of Massachusetts, "that when a statute has been passed, some part of which is not within the competency of the legislative power, such part thereof will be adjudged void, while all other parts of the act not obnoxious to the same objection will be held valid (*Fisher agt. McGee,* 1 *Gray,* 29). If it be admitted then, that the legislature has not the power to prohibit the publicly keeping or the giving away of liquors, or the selling to minors, &c., or to authorize the necessary enforcement of the law in

them to live. It is not enough to say the lawmakers did not intend such interpretation should be given to the act, and looking at it we find that it sternly provides that the places shall be completely and effectually closed, not for the purpose of preventing sales, but for all purposes, and, at the discretion and judgment of a police officer who has the right to effect the closing, to watch and maintain it. But the gravest constitutional objections attach to sections 19 and 20. Do they not on their face conflict with constitutional provisions? The bill of rights provides, article 5, "Nor shall any person be deprived of liberty without due process of law," nor shall private property be taken for public use without just compensation; * * * and by article 4 : "The right of the people to be secure in their houses against unreasonable seizures shall not be violated." The excise act provides as follows, 19th and 20th sections :

SECTION 19. It shall be the duty of every sheriff, constable, policeman and officer of police to compel the observance and to prevent the violation of the foregoing provisions hereof; if necessary by summarily closing and keeping closed any places in which shall be violated any of such provisions.

SECTION 20. Every sheriff, constable, officer or member of police shall forthwith arrest all persons who shall violate any of the provisions of this act, and carry such persons before any magistrate of the city or town in which the offense shall be committed, to be dealt with according to the provisions of this act. And it shall be the duty of every magistrate to entertain complaints for a violation of any of the provisions of this act made by any person under oath.

Not only ministerial duties are here conferred upon peace officers, but judicial powers. They are to "compel the observance" of the law; when and how to compel, they judge. They decide upon the necessity. They act, by summarily closing. Summarily is a word excluding the ordinary processes. They are to keep the places closed. For how long? To keep the places closed "in which shall be violated any of such provisions," *i. e.* "the foregoing provisions hereof," that is to say those mandatory provisions of the act. In one place a man may have sold liquor to an apprentice or a child under only technical guilt. He is not only punished by imprisonment therefor, but the place is tainted by his crime, it seems, and is to be kept closed thereafter. The highest crime known to law is murder. Will some future legislature shut up the place for all time in which the murderer committed his crime, as a high cabinet officer closed the building in which an ever to be deplored assassination was committed? Crime is a personal

the manner and by the means provided, it does not follow that it transcended its powers by making the sale of gin by the glass, without license, an offense punishable according to the ordinary forms of law.   The question or the validity of the other provisions of the statute to which allusions have been made is not before me.   While I have decided convictions respecting them, I do not for this reason think it proper to express them.

The petitioner must be remanded.

offense, to be visited by personal reprobation.   When an offender is to be arrested under the provisions of this act, no warrant is necessary.   Some skillful hand that framed the metropolitan police act, was careful to liken the power given by it to a peace officer to arrest without warrant under that act to the common law permit, viz: "Only when the offense was committed within the presence of such peace officer."  But there is no such limitation in these sections.  Under all other penal statutes, offenders even after they are arraigned before a magistrate, are to be dealt with according to the general provisions of the Revised Statutes.  But the excise act says "to be dealt with according to the provisions of this act."  Will any magistrate, after reading the entire act, say where are the provisions that will guide him to obey section 20?  The most serious question now arises.  Can these remedial and punitory sections be so separted from the rest of the law as that they may be declared void without injuring the body of the act?  The counsel for the accused earnestly urges that to convict them is to necessarily subject them to the operation of these sections.  Is it an answer for the people to urge that such sections may never be acted upon?  Courts should not expose defendants upon charges of criminal offences to the liability of unconstitutional remedies.  Since the argument commenced in the cases now at bar, writs of *habeas corpus* and *certiorari* have officially informed the court that the illegalities and what might almost be called the unusual punishment forbidden by the federal bill of rights are being practiced.  Before the rebellion, such sections would have been deemed monstrous.  "Military necessity" has made a portion of the people readily obedient to such strange, unusual and original exercise of despotic power, and has made other portions at least tolerant of it.  Some legislators have been taught to pattern the statute book after the army regulations, and to makeof judicial tribunals *quasi* court martials, and of civil peace officers, martinets.  To the extent of my reading and information, not even in the New England liquor law, were there to be found such odious features.  That law allowed a peace officer to enter a store and seize and destroy liquor; but it also permitted to the owner possession and control of the keys of his door afterwards!  The counsel for the people have failed to take this excise act out of the reasoning and force of the decision of the court of appeals of this state in the case of *Wynehamer*, which distinctly held that any law upon the traffic in liquor which necessarily, either by express or implied prohibition, destroyed the quality of property (and which case distinctly recognized liquor as property), or deprived the citizen of his legal procedure in defending that property, was unconstitutional and void.  In conclusion I sustain the demurrers, because I believe that the act in question, the excise act of 1866, violates the bill of rights by depriving within the instances before mentioned, the citizen of his liberties, by seizing his property without due process of

Wyman agt. Smead.

# SUPREME COURT.

## Julia A. Wyman agt. William H. Smead and others.

The opinion of the majority of the court in this case is published in this *Vol. ante, p.* 1. The following dissenting opinion of Judge Miller has been received since the opinion of the court was published, and is given below.

*Albany General Term December,* 1863.
*Before* Hogeboom, Peckham *and* Miller, *justices.*

Miller, J., *dissenting.* I am constrained to differ from the opinion of Mr. Justice Peckham, in favor of granting a new trial in this case. I agree, however, with him that the

---

law, by virtual prohibition preventing his dealings with his own property, and without due forms of law, or without providing due opportunity for trial, or being heard upon the seizure of his property. And furthermore, by impliedly confiscating the same as a punishment for happening in a critical moment to be its possessor. If there are any other like indictments of records, the same decision may be entered upon motion.

The district attorney then said : Of course it is my duty to proceed under the act. Therefore, in the discharge of my official duty I have noticed all the parties who were under indictment, in accordance with that act, to respond in court, and as is usual, to plead to the indictment that had been found. The first day of the term is usually assigned for pleading ; and I am given to understand by several counsel here that the court room is quite crowded with those defendants ; and therefore, to relieve the court and enable it to proceed with its business, it is but fair and just that I should say that so long as the decision of this court has been upset, I shall not, out of respect to the court, call upon any of the defendants in like cases to plead. And, therefore, if your honor desires to look into this question (perhaps you have already done so), I can adjourn these cases for some time, or I can adjourn them for the term.

Judge Russell—I do not desire to look into these cases. I have examined the act. Therefore, so far as the decision of the recorder is concerned, that will be controlling. I shall not take any action in the matter until after the decision of the supreme court.

The District Attorney—I had an interview with one of the judges of the supreme court upon some other business, and was informed that there would be no general term till November. I may therefore announce to the counsel present that they may discharge their clients.

Judge Russell—I think it better to lay over the whole of these cases until after the decision of the supreme court.

The district attorney then announced that he would not take up these cases to-day.

Mr. McKeon moved that the indictment against his client be quashed.

The court declined to entertain the motion.

Mr. Spencer moved that his client be discharged on his own recognizance.

This the court also refused to grant, and expressed the conclusion to take no

---

action in the matter until after the decision of the court of appeals, but shall consider the decision of the recorder as controlling.

Mr. McKeon—I ask, if your honor please, that these men be discharged. The police have gone on arresting them notwithstanding the decision in another court that this law is clearly unconstitutional. I ask the district attorney to say that under the decision of this court, these men cannot possibly be held for one minute.

The District Attorney—I have already stated that so long as this decision is controlling, I shall not move any of these cases.

Mr. McKeon—Men are here under an unconstitutional act, not worth the paper upon which it is written, and I ask that they may be discharged.

The District Attorney,—I am not counsel for these men, and therefore the counsel should ask to have them discharged on Saturday, which is the regular motion day.

The Court—A motion can be made on the day of trial, or on Saturday.

This matter was then closed, and the court proceeded to other business.